UNITED STATES of America,
Appellant,

v.

Amparo Pelaez DE GARCES, Appellee.

No. 982, Docket 75–1013.

United States Court of Appeals,
Second Circuit.

Argued May 9, 1975.

Decided June 13, 1975.

Paul B. Bergman, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., on the brief), for appellant.

Stephen H. Bezozo, New York City, for appellee.

Before FEINBERG, TIMBERS and VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

The United States appeals, under 18 U.S.C. § 3731, from a judgment of acquittal entered by the United States District Court for the Eastern District of New York, Mark A. Costantino, J., after a jury had returned a verdict finding Amparo Pelaez De Garces guilty of knowingly importing cocaine. 21 U.S.C.

§§ 952(a), 960(a)(1).[1] The sole issue on appeal is whether, contrary to the judge's view, the evidence was sufficient to sustain the jury's verdict. At trial, it was quite clear that appellee De Garces imported some beds from Colombia and that cocaine was concealed in the headboard of one of the beds. The only substantial issue was whether appellee knew that the cocaine was being smuggled in. After hearing argument and reviewing the record, we concluded that there was sufficient evidence of appellee's knowledge to allow the jury to find her guilty. Accordingly, on May 14, 1975, we filed an order vacating the judgment of acquittal and remanding the case to the district court with directions to reinstate the guilty verdict and to enter judgment thereon, the mandate to issue forthwith. The order also stated that this opinion would follow.

## I

From the evidence before it, the jury could have found as follows: De Garces, a resident alien in this country, was in her native country of Colombia in late June 1974. At that time, she was an unemployed hotel maid. Some time during her stay in Colombia, appellee purchased five Louis XV style beds for $500. The beds were shipped by Air France from Colombia to JFK International Airport at a prepaid cost of $156.51. Shipping documents identified appellee as consignee of the beds but falsely listed her address as 51–55 Van Kleen Street, Elmhurst, New York. Shortly after the beds arrived at JFK Airport, United States Customs agents, acting on a tip, located the shipment and discovered one and one-half kilograms of cocaine expertly hidden inside the headboard of one of the beds, which was identified by an "X" mark. The day after the beds arrived in New York, appellee employed a Spanish travel agency to pick them up. Appellee gave the agency $300 and a number of documents, including one with the false address for delivery of the furniture. Frank Brea, an employee of the agency, made an abortive attempt to get the beds the following day, but was informed by an Air France cargo officer that either a customs broker or appellee personally would have to pick up the shipment. After being told what had happened, appellee signed a power of attorney authorizing the agency to get the shipment. She also agreed to pay for a letter to be provided by the agency falsely stating that the beds had been imported as samples for a furniture store. Thereafter, the agency procured such a letter.

The next day, appellee again went to the travel agency, although she was ill, in pain, and had been advised by her doctor that she should be hospitalized for treatment of hemorrhaging in her stomach. She asked Brea to accompany her to obtain a broker and then go to the airport to pick up the beds. Brea testified that "[s]he said don't worry about the money. If I have got to pay more don't worry. I will pay whatever it is." Later that day, appellee entered a hospital.

Three days later, though still weak, she left the hospital. Appellee immediately telephoned the agency to find out about the beds and then took a taxi to her niece's apartment in Queens; the address there differed from the false address given to Air France. The travel agency had been advised that the beds were to be delivered to this new address. The same day, Brea again went to the airport to get the beds. At the request of Drug Enforcement Administration agents, Brea agreed to cooperate with them in delivering the beds. The agents marked an "X" on one of the headboards to resemble the "X" found on the headboard of the bed where the cocaine had been hidden. When Brea and an undercover DEA agent arrived at the address that had been given them, appellee was waiting on the street. Although the DEA agent offered to carry the beds up to her apartment, appellee told the men

---

1. De Garces was also indicted in a separate count for possession of the cocaine with intent to distribute it. 21 U.S.C. § 841(a)(1). At the close of defendant's case, the district judge dismissed this count.

to leave the beds against the rear of the building. She explained that her cousin, who was working, had the keys to the apartment.

After the beds were unloaded, appellee immediately examined the open crate, which contained the plainly visible headboard with an "X" mark. Appellee then tipped the two "delivery" men $10 apiece, refused another offer to have the beds taken upstairs and signed a receipt acknowledging delivery to her. Appellee was then arrested.

This, in essence, was the Government's case-in-chief.[2] After it had been presented, appellee moved for a judgment of acquittal, conceding that "the whole question in this case is knowledge on the part of the defendant." The judge denied the motion and De Garces then testified in her own defense. She denied purchasing the beds in Colombia or agreeing to pay for a fake furniture store letter. She claimed that she had no knowledge that the shipment of beds contained cocaine. Her story was that while on vacation in Colombia, she was asked by a man she met to receive shipment of five beds to be sent to the United States. The reason given was that the ultimate recipient of the beds was not a resident of the United States and it would be easier for appellee to receive the shipment. She was promised $100 for her efforts, to be paid when the beds were delivered. On her return to the United States, she was contacted by a Jorge Rodriguez, who provided the necessary money and documents and directed her to the travel agency. She admitted that when the beds were delivered, her niece's apartment, in fact, was unlocked.

At the end of the entire case, appellee moved to dismiss both the count charg-

ing her with possession of cocaine with intent to distribute, see note 1 supra, and also the count that is the subject of this appeal. As to the former, the judge granted the motion principally, it seems, on the ground that appellee "had no control" over the cocaine and therefore never "possessed" it. The validity of that ruling is not before us. The other count was submitted to the jury, which returned a verdict of guilty. Thereafter, on appellee's motion, the judge set aside the jury verdict and entered a judgment of acquittal. Fed.R.Crim.P. 29. The basis of his oral ruling was as follows:

As noted above, one of the essential elements of the count on which the Jury returned a guilty verdict was knowledge that she was importing a controlled substance. In the factual context of this case, this means knowledge that the headboards imported into this country contained a controlled substance. In its effort to show that defendant had knowledge of the controlled substance, the prosecution introduced only circumstantial evidence. In appropriate circumstances, circumstantial evidence may be sufficient to justify an inference that a defendant was aware that the controlled substances were illegally imported, United States against Nathan, 476 F.2d 456 (sec. circuit 1973, cert. denied) 414 United States 823, 94 S.Ct. 171, 38 L.Ed.2d 56 (1973).

But in the case at bar, the circumstantial evidence of her knowledge was so weak as to compel this court to conclude that as a matter of law, there must be a reasonable doubt in a reasonable mind as to whether one of the essential elements of the crime charged was present here.

.     .     .     .     .

2. The judge excluded other evidence, including a letter which, we are told, had been inadvertently opened by a tenant who resided in the same building as the addressee. The letter apparently substantially outlined the plan for importing the cocaine and inculpated appellee. The judge excluded the letter because there was not sufficient independent evidence connecting appellee with other alleged conspirators (the sender and addressee of the letter) to allow the letter to be used as evidence against her. In view of the disposition of this appeal, we express no view on this ruling and have not considered the letter in assessing the sufficiency of the evidence.

In view of the Taylor rule[3] and the Court's finding on the failure to prove beyond a reasonable doubt an essential element of the crimes charged, this Court is compelled to direct a judgment of acquittal.

This Court emphasizes that it has no intention of substituting its judgment for that of the Jury in viewing the facts of this case.

Rather the Court finds that as a matter of law the evidence produced at trial failed to prove beyond a reasonable doubt an essential element of the crimes charged.

█ The Government appeals the judgment of acquittal under 18 U.S.C. § 3731. Although the point was not raised by appellee, section 3731 permits government appeals only in cases where the Double Jeopardy Clause of the Constitution allows them. *United States* v. *Wilson,* 420 U.S. 332, 337–340, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). If our own decision in *United States* v. *Jenkins,* 490 F.2d 868 (2d Cir. 1973), aff'd 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), stood alone, the appealability question would be very troublesome, since the acquittal was entered here solely on the basis of the insufficiency of the evidence adduced at trial. However, the Supreme Court affirmance in *Jenkins* clearly indicates, albeit in dictum, that where

the jury returns a verdict of guilt but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. In that situation a conclusion by an appellate court that the judgment of acquittal was improper does not require a criminal defendant to submit to a second trial; the error can be corrected on remand by the entry of a judgment on the verdict. To be sure, the defendant would prefer that the Government not be permitted to appeal or that the judgment of conviction not be entered, but this interest of the defendant is not one that

the Double Jeopardy Clause was designed to protect.

420 U.S. at 365, 95 S.Ct. at 1011. The Court went on to interpret *Wilson* as holding

that the Double Jeopardy Clause does not bar an appeal when errors of law may be corrected and the result of such correction will simply be a reinstatement of a jury's verdict of guilty . . . .

420 U.S. at 368, 95 S.Ct. 1012. In this case, as will be seen below, the judge was mistaken as a matter of law in holding that the evidence was insufficient to support conviction. Accordingly, the language of the Supreme Court seems to allow little doubt that this appeal by the Government is authorized by section 3731.

## II

█ The Government argues that the evidence was plainly sufficient to create an issue of fact for the jury. The judge correctly referred to the governing rule of law, which we adopted in *United States* v. *Taylor,* supra, 464 F.2d at 243:

The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.[4]

---

**3.** The reference is to *United States* v. *Taylor,* 464 F.2d 240, 243 (2d Cir. 1972), quoted in the text infra.

**4.** This was Judge Prettyman's formulation in *Curley* v. *United States,* 81 U.S.App.D.C. 389, 160 F.2d 229, 232–33, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

Moreover, in dealing with the key issue of guilty knowledge, the judge charged that the jury could convict if it found that defendant actually knew there was cocaine inside the headboard or consciously avoided learning whether cocaine was concealed there.[5] Applying the appropriate standard to this case, therefore, the key issue is whether there was any evidence "upon which a reasonable mind might fairly conclude . . beyond a reasonable doubt" that appellee actually knew or consciously avoided learning that the bed shipment contained cocaine.

 After a careful examination of the record, we agree with the Government that a jury question was fairly raised. Despite severe illness and pain, appellee postponed hospitalization in an attempt to obtain the beds and said she would pay whatever was necessary to get them. Brea testified that appellee promised to pay for a false letter from a furniture store. True, appellee denied this, but the jury was free to believe Brea rather than her. When the beds were delivered, appellee immediately examined the crate with the exposed, "X"-marked headboard and then indicated her satisfaction with the shipment. Also, in an apparent desire to get rid of the "delivery" men, appellee falsely implied that the apartment was locked. Moreover, appellee's story was hardly reasonable. Asked by a stranger in Colombia to receive a shipment of bed samples in the United States, she was telephoned repeatedly by another stranger, Jorge Rodriguez, who gave no address or telephone number for himself or even indicated that he was in the furniture business or why the delivery point of the bed samples was changed. It was clear that appellee treated the beds as having unusual significance, far more than justified by the $100 allegedly due her. In addition, despite the extremely unusual circumstances surrounding the transaction, appellee failed to make any serious inquiry about the purpose of the shipment. On this evidence and under the judge's charge, the jury could properly find the requisite guilty knowledge. Cf. *United States* v. *Joly,* supra; *United States* v. *LaFroscia,* 485 F.2d 457 (2d Cir. 1973); *United States* v. *Carneglia,* 468 F.2d 1084, 1088 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1391, 35 L.Ed.2d 611 (1973).

Judgment of acquittal vacated; case remanded to the district court with directions to reinstate the guilty verdict.

---

5. See, e. g., *United States* v. *Olivares-Vega,* 495 F.2d 827, 830 (2d Cir.), cert. denied, 419 U.S. 1020, 95 S.Ct. 1020, 42 L.Ed.2d 293 (1974); *United States* v. *Joly,* 493 F.2d 672 (2d Cir. 1974); *United States* v. *Sarantos,* 455 F.2d 877, 880–82 (2d Cir. 1972). Defense counsel did not object to the judge's charge.