**UNITED STATES of America, Appellee,**

v.

**Greene Berry MULLENS, Appellant.**

**No. 874, Docket 75–1436.**

United States Court of Appeals, Second Circuit.

Argued March 26, 1976.

Decided June 23, 1976.

Roger P. Williams, Asst. U. S. Atty., W. D. N. Y., Buffalo, N. Y. (Richard J. Arcara,

U. S. Atty., W. D. N. Y., Buffalo, N. Y., on the brief), for appellee.

James L. Lalime, Buffalo, N. Y. (Thielman & Lalime, Buffalo, N. Y., on the brief), for appellant.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

Greene Berry Mullens appeals from an order of the Western District, entered on October 9, 1975, denying his motion to suppress certain incriminatory evidence. Relying upon our earlier affirmance of the district court's decision that the underlying search was unconstitutional, *United States v. Mullens*, 510 F.2d 968 (2d Cir. 1975), appellant contends that the statements and items now in dispute represent inadmissible fruit of the poisonous tree. Judge Curtin, however, concluded that the taint had been dissipated by appellant's subsequent voluntary actions. On October 29, 1975, following the district court's ruling, Mullens pleaded guilty to the first count of an indictment charging him with counterfeiting in violation of 18 U.S.C. § 471, preserving nonetheless his right to appeal on the Fourth Amendment issue.[1] At the same time, on motion of the government, the court dismissed a second count, alleging possession of counterfeit bills, 18 U.S.C. § 472. We affirm.

The evidence adduced at the suppression hearing establishes the following: On December 7, 1973, Detective Sergeant James E. Hunter of the Buffalo Police Department applied for and obtained a search warrant for Mullens' home at 1536 Jefferson Avenue. The basis for the warrant was a tip from an unidentified but "reliable informant" that appellant had several hundred counterfeit ten dollar bills that he was trying to sell. The informant further revealed that two days earlier he had observed a suitcase containing counterfeit bills in appellant's apartment.

---

[1]. This procedure has previously been approved by this court as a means of conserving already overextended judicial resources. *United States v. Faruolo*, 506 F.2d 490, 491 n. 2 (2d Cir. 1974); *United States v. Rothberg*, 480 F.2d 534 (2d Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973).

At approximately 10:30 that same morning, Hunter, accompanied by six other police officers and two Secret Service agents, proceeded to the above address. Mullens was not at home when they arrived, but his mother and father were. During the course of the ensuing search, the police uncovered nearly $11,000 in uncut counterfeit ten and twenty dollar bills. The money was discovered in a crumpled grocery bag that Mrs. Mullens had been sitting on, claiming that it was dirty laundry which she was embarrassed to let the police officers see. After the Secret Service agent on the scene had determined that the bills were in fact counterfeit, appellant's parents, although not placed under formal arrest, were both taken to police headquarters for questioning.[2]

Shortly thereafter, Hunter was visited by appellant's cousin, a former police cadet, who had learned that his aunt and uncle were being detained. When informed of the reason for their interrogation, he offered to contact appellant. When Mullens in turn heard the news, he agreed to come down to police headquarters. By all accounts, he was "very worried about his parents' problem" when he arrived sometime between 1:30 and 2:00 p. m. In an apparent attempt to exculpate them, he immediately volunteered the information that he was the one who "did it" and that he was solely responsible for the counterfeiting operation. Before allowing him to continue any further, Hunter, who had not yet asked any questions, advised Mullens of his *Miranda* rights which appellant then promptly waived.

At some point in the discussion, Secret Service Agent Zona, who had participated in the search of 1536 Jefferson Avenue, entered the interrogation room. After being introduced, he again asked appellant if he had done the counterfeiting alone, to which Mullens responded "yes." Zona then added: "We really have the goods on your mother as far as possession, we want full cooperation at this point."

Mullens thereupon provided a written consent to search 1361 Fillmore Avenue where, he revealed, he kept his printing press. On the way, he first directed the officers to an address on Wakefield Street where, escorted by Hunter, they retrieved the counterfeiting plates. The press was then secured at the Fillmore Avenue location in an apartment which Mullens opened with his own keys.

At approximately 5:00 p. m., still on December 7, Mullens returned to Secret Service headquarters in Buffalo with Hunter and Zona. Once there, and having again been given his *Miranda* rights, appellant dictated a detailed written confession.

Prior to trial, Mullens made a timely motion to suppress not only the bills discovered at his home, but also the press and plates seized thereafter as well as his inculpatory statements. A suppression hearing was held on May 14, 1975, following which Judge Curtin ruled that the initial search at 1536 Jefferson Avenue was unconstitutional since the search warrant upon which it was purportedly based had been fatally premised on an inadequate affidavit. He expressly refrained from passing on the remainder of Mullens' motion pending appeal to this court. Only after his first order was affirmed without opinion, as previously noted, did Judge Curtin issue the second order which is now being challenged.

The critical question, as phrased by the Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963), is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Judge Curtin held that the causal chain here was broken by Mullens' voluntary decision to admit his guilt and to lead the police to the incriminating evidence. We agree.

■ Appellant contends that were it not for the unlawful search of his home, his

---

**2.** A second woman found on the premises was apparently also placed in custody at this time.

The record, however, is silent as to what, if anything, later happened to her.

parents would never have been brought to police headquarters and he would not have cooperated with the authorities. Rather than being voluntary, he insists that his filial affection left him with no choice but to act as he did once he learned that his parents were being detained. However, even if true, this reason for his actions falls short of the showing necessary to render either his confession or his consent to search involuntary. Were we to adopt the "but for" reasoning proposed by appellant, "virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind," *Schneckloth v. Bustamonte*, 412 U.S. 218, 224, 93 S.Ct. 2041, 2046, 36 L.Ed.2d 854 (1973).

■ Mullens' argument is founded upon a misconceived identity between those choices which are physically or psychologically coerced and those which are merely difficult. Only the former are void under our law. The line, of course, is often a subtle one and must depend in each instance upon an evaluation of the totality of the circumstances presented. Id. at 226–27, 93 S.Ct. 2041. It is instructive to note that, so far as we know, no federal court has yet held that a confession or consent is involuntary solely on the ground that it was prompted by the defendant's desire to protect a relative from the rigors of arrest, interrogation and possible confinement. *United States v. McShane*, 462 F.2d 5 (9th Cir. 1962); *Vogt v. United States*, 156 F.2d 308 (5th Cir. 1946); *United States v. Stegmaier*, 397 F.Supp. 611 (E.D.Pa.1975); *Wickline v. Slayton*, 356 F.Supp. 140 (1973); *United States v. Reese*, 351 F.Supp. 719 (1972). Appellant has suggested no unusual factor in this case which would impel us to reach a different conclusion in this case.

Specifically, the record is bereft of any indication of police overreaching. See *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (police feigned telephone call in defendant's presence threatening to summon his wife for questioning). It was Mullens' cousin, not the police, who notified appellant that his mother and fa-

ther were being detained. Appellant's spontaneous decision then to come down to headquarters was made by him alone and outside of the potentially coercive atmosphere of the station house. See *Beckwith v. United States*, —— U.S. ——, 96 S.Ct. 1612, 48 L.Ed.2d 1, 44 U.S.L.W. 4499 (1976). His first admissions, blurted out before the police had even begun to interrogate him, were quickly cut short by Detective Hunter who interrupted and gave the *Miranda* warnings. And, although Mullens' anxieties were likely exacerbated by Agent Zona's comment that "we have the goods on your mother . . .," the uncontradicted testimony of Zona and Hunter was that it was appellant who initiated the bargaining process, offering to trade his own cooperation for his parents' release. Mullens chose not to take the stand during the suppression hearing and rebut this version of events although he might have done so without risk that anything he there said could later be used against him at trial. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Nor is there any intimation that Mullens did not fully understand the consequences of his actions.

■ We therefore hold that the district court was correct in finding that appellant's incriminatory statements, both those made immediately upon his arrival at police headquarters and those later formalized in a written confession, as well as his consent to search the Fillmore Avenue and Wakefield Street addresses, were sufficiently a product of Mullens' free will to purge the taint of the earlier, illegal search at 1536 Jefferson Avenue. See *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). Our conclusion that the government has carried its burden of proving that appellant's will was not overborne, see *Colombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961), similarly disposes of his related contention that the police erred in not securing a search warrant before seizing the printing press and counterfeit plates. A search warrant is unnecessary when a valid and voluntary consent is

obtained. *Schneckloth v. Bustamonte, supra.* Mullens' motion to suppress was thus properly denied.

Affirmed.