**UNITED STATES of America**

v.

**Derrick D. LYNCH, Defendant.**

**No. 89 Cr. 0207 (KTD).**

United States District Court,
S.D. New York.

June 15, 1989.

Benito Romano, U.S. Atty., S.D.N.Y. (David N. Kelley, Asst. U.S. Atty., of counsel), New York City, for U.S.

Joshua L. Dratel, Gerald B. Lefcourt, P.C., New York City, for defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendant Derrick D. Lynch moves to suppress certain evidence seized and statements made thirty days before the events that underlie the charges in the indictment at bar. For the purposes of this motion the United States (the "Government") concedes the illegality of the seizure but opposes the motion on the ground that the exclusionary rule should not apply to bar the subject evidence from its intended use as proof of a subsequent and unrelated offense. The Government also argues that there is no need for a hearing in this matter because the attorney's affidavit submitted by Lynch is not sufficient to create an issue of fact. For the following reasons, I find that the exclusionary rule does not apply under these circumstances and there is therefore no need for a suppression hearing.

### FACTS

In the course of a murder investigation that began April 13, 1988, Lynch was observed in the company of the primary suspect. On April 25, 1988, while driving his sister's automobile, Lynch was stopped and arrested by officers of the New York City Housing Police Department ("Housing Police"). He was brought to the Housing Police station where he was questioned by Detective Coomey, one of the Housing Po-

lice officers assigned to the murder investigation.

Lynch's formal arrest on April 25 is apparently based on an outstanding New York State traffic violations warrant. The Government's submissions, however, conflict in their report of the factual circumstances surrounding the stop, arrest, and questioning of Lynch. It is not clear whether Lynch was formally arrested when stopped on the street or after arrival at the Housing Police station and discovery of the outstanding warrant. At no time does the Government discuss whether Lynch was advised of his Constitutional rights and I will assume that he was not so advised.

The Government's descriptions of the sequence of events accompanying Lynch's formal arrest consistently relate that Lynch's passport, seized by the Housing Police, had had the photograph removed. Detective Coomey attests that, during questioning at the Housing Police station, Lynch offered the passport when asked for identification and Lynch stated that he had personally removed the photograph. Lynch does not deny this description of the incident.

Detective Coomey was advised by an agent at the New York Field Office of the State Department that a passport without a picture is "mutilated" and should be confiscated. Detective Coomey therefore delivered the passport to State Department agents rather than return it to Lynch upon his release on bail.

The indictment at bar charges that, approximately one month after the April 25 encounter with the Housing Police, Lynch applied at the New York passport office for a replacement passport. In the application Lynch falsely stated that his passport was stolen from his sister's car. The bases for charging Lynch with the false statement include Detective Coomey's information and delivery of the seized pictureless passport to the State Department.

## DISCUSSION

Lynch argues that the stop, search, interrogation, and seizure of his passport on April 25 was in violation of his rights under the Fourth, Fifth, and Sixth Amendments and that the pictureless passport and statements made to Detective Coomey should therefore be excluded from use as evidence against him. The illegality of that seizure, however, does not create continuing immunity for all subsequent violations that might be proved by evidence obtained during that seizure.

The exclusionary rule "has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). *See also United States v. Leon*, 468 U.S. 897, 909–11, 104 S.Ct. 3405, 2413–14, 82 L.Ed.2d 677 (1983). Rather, because of the rule's goal of deterrence, the Court of Appeals for the Second Circuit has noted that "the rule's use has been refused in prosecutions that no one could reasonably have anticipated at the time of the seizure because they were the products of the defendant's own intervening voluntary acts." *Tirado v. C.I.R.*, 689 F.2d 307, 314 (2d Cir.1982) (citations omitted), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1966).

A number of other circuits, particularly in perjury cases, have recognized such an exception to the exclusionary rule:

"When the Government is effectively denied the possibility of direct prosecution on the basis of illegally seized evidence, no significant additional deterrent effect could be realized by suppressing the evidence at a trial of the search victim for a crime committed after the illegal search and with the knowledge that the illegal search occurred."

*United States v. Finucan*, 708 F.2d 838 (1st Cir.1983) (quoting *United States v. Turk*, 526 F.2d 654, 667 (5th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976)) (collecting cases). This exception is particularly appropriate in the case at bar, where the essence of the crime charged, although it is not "perjury," involves a false statement made subsequent to and with knowledge of the seizure. *Cf. United States v. Ceccolini*, 542 F.2d 136,

98

142 (2d Cir.1976) (declining to apply exception from exclusionary rule when perjury committed without knowledge of prior illegal search), *rev'd on other grounds,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

Finally, I note that the decision of the Housing Police to advise the proper authority of the mutilation of Lynch's passport does not link the charges in the indictment at bar to the illegal seizure so as to invoke the exclusionary rule. The rule might be applied to suppress the passport from proof of the charge of mutilation. Likewise, application of the exclusionary rule might be appropriate if the illegal police conduct in obtaining the evidence had been particularly flagrant. *See Leon,* 468 U.S. at 911, 104 S.Ct. at 3414. However, Lynch's subsequent and voluntary criminal act charged in the indictment at bar could not have been anticipated by the Housing Police at the time of the seizure. *See Tirado,* 689 F.2d at 312–13.

For the foregoing reasons, Lynch's motion to suppress is denied. Because I find that the exclusionary rule does not require suppression even if the challenged police actions were illegal, Lynch's request for a suppression hearing is also denied.

SO ORDERED.