UNITED STATES of America,
Appellant,

v.

Mack S. TANE, Appellee.

No. 91, Docket 28312.

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1963.

Decided March 24, 1964.

G. Robert Blakey, Attorney, Dept. of Justice, Washington, D. C. (Joseph P. Hoey, U. S. Atty., for the Eastern District of New York, on the brief), for appellant.

Michael Levi Matar, New York City, for appellee.

Before SMITH, KAUFMAN * and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The government appeals from a pretrial order, entered by Judge Jacob Mishler in the Eastern District of New York, dismissing an indictment against Mack Tane. The order sustained the defendant's objection to certain proffered testimony and dismissed the indictment on the ground that it had resulted from illegal wiretapping.

Mack Tane was indicted on February 7, 1961 on a charge of violating 29 U.S.C. § 186(b) and (d) (1958) [1] by accepting $1000 from an employer, Pase Motors, Inc., on or about February 10, 1956, while Tane was a business agent of Local 239 of the International Brotherhood of Teamsters. Tane moved by an order to show cause, dated February 7, 1962, for suppression of any testimony obtained because of unlawful wiretapping and for dismissal of the indictment if unlawfully obtained evidence was presented to the grand jury. At a hearing on the motion, it appeared that state officials had tapped a telephone conversation on December 6, 1955 between Leo Guzik, a lawyer for Pase Motors, and Sam Goldstein, president of Local 239. This conversation first indicated to the government that officials of Local 239 might be receiving unlawful payments from Pase Motors, Inc. Government investigators questioned Wesley Pase, an officer of Pase Motors, Inc. At first Pase denied making any payments to union representatives, but when confronted with information that the conversation between his attorney and Sam Goldstein had been tapped, Pase admitted making the payments to secure labor peace. Pase subsequently testified before a New York County Grand Jury in May of 1956, before the Permanent Subcommittee on Investigations of the Senate Committee on Government Operations in January of 1961, and before the Grand Jury that indicted Tane in February of 1961. Tane's motion was aimed at suppressing Pase's testimony.

On September 10, 1962 Judge Mishler denied Tane's motion on three grounds: (1) that neither Tane nor Pase were parties to the intercepted telephone conversation, and under Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L. Ed. 1312 (1942), testimony procured by

---

* Judge CLARK heard argument in this case, but died before voting on its disposition on appeal. Judge KAUFMAN was substituted as a member of the panel and has participated in the determination of the appeal on the record and briefs.

1. 29 U.S.C. § 186(b):
"It shall be unlawful for any representative of any employees who are employed in an industry affecting commerce to receive or accept, or to agree to receive or accept, from the employer of such employees any money or other thing of value."
29 U.S.C. § 186(d):
"Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both."

an illegal wiretap is admissible against one not a party to the conversation; (2) that Pase was motivated to testify by a variety of reasons and did not acquire knowledge of facts to which he testified through illegal monitoring; and (3) that evidence is not subject to suppression under Rule 41(e) of the Federal Rules of Criminal Procedure unless it is obtained by an unreasonable search and seizure, and a wiretap in the absence of a physical intrusion is not an unreasonable search and seizure.

Through an error by the clerk of the court, the defendant was given a March 8, 1956 memorandum of James J. Mahoney, a New York County investigator. The memorandum, which the court had refused to allow the defendant to examine since it was not in evidence, indicates that on December 6, 1955, Leo Guzik called Sam Goldstein and Max Tane, but the digest of the call which follows does not indicate that Tane took part in the reported conversation.[2] After a rehear-

ing on the motion, the court found that the memorandum did not substantiate the claim that Tane was a party to the conversation, and in a decision dated October 17, 1962, adhered to its original decision of September 10, 1962.

Prior to the selection of a jury, the defendant renewed his application to suppress the testimony of Wesley Pase. The court viewed this application as an objection to the anticipated testimony and a renewal of the motion to dismiss the indictment. On rehearing, additional testimony was adduced that showed that the identity of Wesley Pase was first derived from the unlawful wiretap of December 6, 1955, and that disclosure of the conversation between Guzik and Goldstein to the Assistant District Attorney led to the testimony of Wesley Pase. Moreover, a summary report prepared by detectives Herzfeld and Lynch, who actually listened in on the December 6 wiretap, was introduced. This report revealed that Tane was in on the inter-

2. Defendant's Exhibit C: Mahoney Memorandum

"March 8th, 1956.

MEMORANDUM:
To: Mr. Harold Birns
From: Inv. James J. Mahoney
Re: SAM GOLDSTEIN:

The following are digests of telephone conversations intercepted over Oxford: 5-1650, listed to United Auto Workers Local #995, 49 West 32nd Street, pertaining to PASE MOTORS INC., 79-20 Queens Blvd., Queens, (DE 5-4000).
Note: The name, address, and telephone number of the above mentioned corporation was obtained from the Queens telephone directory:
11-2-55: 4:20 P.M. Incoming, Mike Moreilli of PASE MOTORS to Sam, tells him the pickets outside PASE said they'd be there 9 days. Sam tells him if they're still there tomorrow he'll send Pat and 4 or 5 guys and go to work on them.
11-2-55: 4:25 P.M. Outgoing to COlumbus: 5-6550 (Local 259) Sam tells Mickey Finn to have his pickets away from Sam's four places tomorrow, PASE MOTORS, Freeman, Paragon and both Leff places.
11-23-55: 11:35 A.M. outgoing: to HAnover: 2-7600. Sam Goldstein to Leo Guzik to ask Leo to ask him for a meeting and terms when they get to-

gether at PASE AUTO next week. Leo is to say the demands are outrageous and then Sam will contact the men and be able to tell exactly what demands he presents the following meeting.
12-6-55: 11:50 A.M. Incoming: (R. 1598—#857-988)
Leo Guzik to Sam Goldstein and Max Tane.
Guzik and Goldstein discuss the PASE MOTORS INC., 79-20 Queens Blvd. They argue about a day off and 10 cents increase for the men. Then they discuss the stock market and Sam says he made between 10 and 12 thousand in the last 4 months. He also says those who lost last year made it up and he wasn't one of the unfortunate ones who lost. Guzik and Sam discuss what Sam would do for himself there. Guzik says speak Jewish, they both do. Guzik said 'What does he do by you?' Sam said 'The usual, every Hanukah, he forgets me he's got trouble.' 'How much do you want for Hanukah?' Guzik asked Sam. Sam said 'The same thing every year.' Leo said 'You got one (inaudible) You'll take half.' Sam said 'No, better nothing than be a beggar.' Leo said 'We'll talk of these things another time.' Sam said 'That's no problem, it's between him and I. We meet and that's the end of it. He knows he's got his obligations.' "

cepted December 6 telephone call in which Guzik and Goldstein discussed a payment from Pase Motors and that Tane discussed the Pase labor situation with Guzik on the same call.[3] Finding the source of the government's evidence thus tainted, Judge Mishler, in an opinion filed April 10, 1963, sustained the defendant's objection to Wesley Pase testifying and dismissed the indictment because it was the product of an unlawful wiretap.

## APPEALABILITY

 The threshold question is whether this court has jurisdiction to hear this appeal. We deny Tane's motion to dismiss for lack of appellate jurisdiction and hold the order appealable. 18 U.S.C. § 3731 (1958) permits appeal to the Court of Appeals by the government in criminal cases where the district court has rendered "a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section." [4]

It is clear that, standing alone, a pretrial order suppressing evidence is not appealable. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Carroll v. United States, 354 U.S. 394, 77 S.Ct. 1332, 1 L.Ed.2d 1442 (1957). Here the suppression order did not stand alone; it was coupled with the dismissal of the indictment, which was found to be the product of illegal wiretapping. The pre-trial dismissal of an indictment, after the granting of a pre-trial motion to suppress the evidence on which the indictment is based is appealable under 18 U.S.C. § 3731. United States v. Wheeler, 256 F.2d 745 (3 Cir. 1958), cert. denied 358 U.S. 873, 79 S.Ct. 111, 3 L.Ed.2d 103 (1958); United States. v. Ashby, 245 F.2d 684 (5 Cir. 1957). Where, as here, the basis of the dismissal of the indictment is inextricably in-

---

3. Defendant's Exhibit B: Herzfeld-Lynch Summary

"Tues—Dec 6, 1955

Herzfeld
Lynch
50
11 A M Inc Leo Guzik out to Sam Goldstein & Max Tane in
857–
9P8 Guzik and Goldstein discuss the Pace Motor Inc. 79–20 Queens Blvd. They argue about a day off and 10 cents increase for the men. They then discuss the stock market. Sam says he made between 10 and 12 thousand in the last 4 months and he is just a "cocker." He also says those who lost last year made it up and he wasn't one of the unfortunate ones who lost. Guzik and Sam then discuss what Sam would do for himself there. Guzik says speak *Jewish*—they both do.

out Guzik 7 What does he do by you.

in Sam 7 The usual every Hanukah. If he forgets me he's got trouble.

out 7 How much you want for Hanukah?

in 7 The same thing every year.

out 7 You got one (inaudible). You'll take half.

in 7 No Better nothing than be a beggar.

out 7 We'll talk of these things another time.

in 7 Thats no problem. its between him and I. We meet and that's the end of it. He knows he's got his obligations.

Max Tane then discusses Pace Labor situation with Guzik."

4. Direct appeal to the Supreme Court by the government in criminal cases is provided from dismissals of indictments or arrests of judgments of conviction where the decision is based upon the invalidity or construction of the statute upon which the indictment is founded, and from the sustaining of a motion in bar when the defendant has not been put in jeopardy. The indictment against Tane was not dismissed because of the invalidity or construction of 29 U.S.C. § 186(b) or (d). Nor was his motion to suppress evidence a "plea in bar," for the grant of the pretrial motion did not necessarily end the cause or exculpate the defendant. See United States v. Hark, 320 U.S. 531, 537, 64 S.Ct. 359, 88 L.Ed. 290 (1944).

tertwined with the basis of the suppression order, both orders must be reviewed together.

## DEFENDANT'S STANDING TO OBJECT

On this appeal the government contends that Tane was not a party to the intercepted conversation, and therefore, has no standing to object to the use, if any, to which the tapped phone conversation was put. Section 605 of the Federal Communications Act provides in pertinent part:

> " * * * no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *."

In the two Nardone cases,[5] the Supreme Court declared that the plain words of this statute prohibited any person not authorized by the sender from violating the integrity of a telephone conversation and that evidence acquired from a statutory violation may not be used to obtain a federal conviction. The Court suggested that in enacting § 605, Congress had deemed it "less important that some offenders should go unwhipped of justice than that officers should resort to methods deemed inconsistent with ethical standards and destructive of personal liberty." 302 U.S. at 383, 58 S.Ct. at 277, 82 L.Ed. 314. Cf. 308 U.S. at 340, 60 S.Ct. at 267, 84 L.Ed. 307.

But in Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942), the Supreme Court refused to extend the sanction of inadmissibility to testimony induced by revealing that conversations to which the defendant was not a party had been tapped. The chief government witnesses in an insurance swindle, Messman and Garrow, had turned state's evidence after being confronted with the contents of unlawfully intercepted telephone conversations implicating them in the swindle. The witnesses were parties to some of the calls, but the defendants were not. Though the product of a violation of § 605, the testimony was held admissible on the narrow ground that the defendants lacked standing to object because they were not parties to the calls. The Court reasoned that since a sender may consent to the divulgence of the conversation, the statute was intended to protect only senders against divulgence. 316 U.S. at 114, 62 S.Ct. 1000, 86 L.Ed. 1312.

█ The word "sender" is perhaps more appropriately ascribed to one who starts a telegram or letter on its way. In a telephone conversation, the caller and the receiver alternately exchange information, and both parties are senders within the meaning of § 605. See United States v. Polakoff, 112 F.2d 888, 889 (2 Cir. 1940), cert. denied 311 U.S. 653, 61 S.Ct. 41, 85 L.Ed. 418 (1940). Cf. Rathbun v. United States, 355 U.S. 107, 113, 78 S.Ct. 161, 165, 2 L.Ed.2d 134 (1957), where Mr. Justice Frankfurter's dissent states explicitly the implicit basis of the majority opinion— that the Court read " 'sender' to mean one of the parties to the communication, whether sender or receiver."

█ The government asks that we reverse the district court's implicit finding that Tane was a party to the intercepted telephone call because there was no evidence to show that it was the defendant's wires and defendant's talk that was being tapped. But the defendant is not deprived of standing because the wires tapped were not his in that sense that the phone was listed to another. In Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126 (1957), the defendant had standing to object to evidence obtained as a result of a wiretap on a phone located in a bar that he frequented. We can see no reason for treating Tane's union office differently from Benanti's bar.

---

5. Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314 (1937); Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

The Mahoney Memorandum and the Herzfeld-Lynch Summary indicate that Guzik called both Tane and Goldstein, and that all three men talked on the wire during the course of the conversation. Inspection of the transcript of the entire tape of the conversation, which was not in evidence below, reveals more clearly than the above summaries that this was, in effect, a three-way conversation with the defendant an active participant. Tane not only took over the phone towards the end of the conversation to discuss the Pase labor situation, but also answered several of Guzik's inquiries as Goldstein relayed questions and answers. Their conversation cannot be dissected to segregate those sentences when Goldstein was talking with Guzik in order to deprive Tane of standing to object to the use to which that portion of the wiretap was put. The policy of § 605 in maintaining the inviolability of telephonic communication without the sender's consent does not permit such fine slicing. Tane was one of the receivers of the call. That made him a party to the call, and as a party he had standing to object to the divulgence of any portion of the conversation.

## "THE FRUIT OF THE POISONOUS TREE"

■ The next question which must be answered is whether the testimony of Wesley Pase before the indicting Grand Jury was the derivative product of the wiretap. We hold that it was. The identity of Pase was derived from the wiretap, and Pase was unwilling to testify or even admit to making any unlawful payments until possession of the wiretap of the December 6 conversation was revealed by the Assistant District Attorney.

The government next contends that Pase's testimony was not subject to suppression because it was the product of an intervening voluntary act, breaking the necessary nexus between the tap and the testimony. While the proffer of a living witness should not be "mechanically equated with the proffer of inanimate evidentiary objects illegally seized," Smith v. United States, 324 F.2d 879, 881 (D.C.Cir. 1963); McLindon v. United States, 117 U.S.App.D.C. ——, 329 F.2d 238 (1964), the government has failed to carry its burden of showing that the information gained from the wiretap did not lead, directly or indirectly, to the discovery of Pase and to Pase's willingness to testify. See United States v. Coplon, 185 F.2d 629, 636, 28 A.L.R.2d 1041 (2 Cir. 1950). Indeed, the record demonstrates that the identity of Pase and knowledge of his implication in unlawful payments was derived from the wiretap, and that Pase was unwilling to testify or even admit to making any unlawful payments until he was told by the Assistant District Attorney that the December 6 conversation between his attorney and union officials had been tapped. The road from the tap to the testimony may be long, but it is straight.

## THE DISMISSAL OF THE INDICTMENT

■ A defendant has no right to have an indictment dismissed merely because incompetent or inadequate evidence was presented to the Grand Jury. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). But a motion to dismiss or quash an indictment because of the absence or incompetency of evidence before the Grand Jury is addressed to the discretion of the trial court, and the decision to grant or deny the motion will not be reversed unless there has been an abuse of that discretion. Carrado v. United States, 93 U.S.App.D.C. 183, 210 F.2d 712, 717 (D.C.Cir. 1953), cert. denied 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954); Stewart v. United States, 300 F. 769, 777 (8 Cir. 1924).[6] As long as there is

6. See also United States v. Garnes, 258 F. 2d 530 (2 Cir. 1958); United States v. Cleary, 265 F.2d 459 (2 Cir. 1959), approving at least by implication of the use of a timely motion to quash or dismiss an indictment for incompetency of evidence.

some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed. Coppedge v. United States, 311 F.2d 128, 132 (D.C.Cir. 1962), reversed on other grounds 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). Here the government concedes that the indictment rested almost exclusively on the testimony of Pase and that dismissal of the indictment was proper if Pase's testimony could not be used. In light of this concession, dismissal of the indictment could hardly be termed an abuse of discretion.

The order of the district court is affirmed.

HAYS, Circuit Judge (dissenting).

The protection of Section 605 is available only to the "sender." Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312 (1942). Therefore the question in the present case is not, as my colleagues would have it, whether Tane was a party to the conversation in general, but whether he was the "sender" of that part of the conversation which led to the questioned testimony. It seems to me to be quite clear that Tane was not the "sender" in the statutory sense. For instance, he could not have "authorized" the interception of the conversation between Guzik and Goldstein nor the "divulging" or "publication" of that conversation.

After the conclusion of all of the conversation with Goldstein,—the conversation which led to the present prosecution,—Guzik talked further with Tane. I fail to see how the fact that Guzik's conversation with Tane followed in the same telephone call, rather than in a separate call, can make Tane the "sender" of that part of the call to which he was not a party.

I believe that the decision of the district court unjustifiably extended the applicability of Section 605, beyond what was intended by Congress or approved by the Supreme Court.

I would reverse.