UNITED STATES of America,
Plaintiff-Appellant,

v.

Adrian J. SHORT, Jr.; Earl L. Riedel,
Defendants-Appellees.

No. 80–3784.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 18, 1981.

Decided Feb. 11, 1982.

Rehearing and Rehearing En Banc
Denied March 23, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2932.

John Sopko, Justice Dept., Organized Crime Strike Force, Cleveland, Ohio, Kate Pressman [Lead counsel], Appellate Sec., William C. Bryson, Chief, Appellate Sec. Cr. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Robert J. Rotatori, Cleveland, Ohio, for Short.

Stewart I. Mandel, McCarthy, Lebit, Crystal, Kleinman & Gibbons, Cleveland, Ohio, for Riedel.

Before LIVELY, BROWN and MARTIN, Circuit Judges.

LIVELY, Circuit Judge.

The government appeals from two orders of the district court which, together, dismissed all charges against the defendants-appellees. Short has been the business agent for many years of two Cleveland unions, Locals 27 and 209 of the International Alliance of Theatrical Stage Employees, and Riedel has been secretary-treasurer of both. Count 1 of the indictment charged the defendants with conspiring to appropriate funds from the two local unions for their own use in violation of 18 U.S.C. § 371. The remaining 24 counts charged them with substantive violations of 29 U.S.C. § 501(c) [1] and 18 U.S.C. § 2 by ac-

---

1. 29 U.S.C. § 501(c) (1976) provides:

(c) Embezzlement of assets; penalty

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his

cepting unlawful expense payments and re-imbursements from the unions. Short was charged as a principal and Riedel as an aider and abetter. We reverse and remand for further proceedings.

## I.

The defendants made separate motions for disclosure or, in the alternative, for the court to conduct an *in camera* inspection of portions of the transcript of proceedings of the special grand jury which indicted them. Short's motion was based on the assertion that some of the testimony before the grand jury was exculpatory in nature, that the prosecutor had failed to instruct the grand jury properly on the elements of the offense set forth in 29 U.S.C. § 501(c), and that this failure was of such magnitude as to require dismissal of the indictment. This motion was denied. Riedel's motion was based on claimed misconduct of the prosecutor. He alleged that at his first two appearances before the grand jury—on April 9, 1979 and June 12, 1979—he was advised by the prosecuting attorney that he was not a target of the grand jury's investigation. When he was called before the grand jury on September 24, 1979, Riedel received no advice that he was not a target of the investigation. He was subsequently indicted on 25 counts, and contended that the prosecutor had abused his discretion and manipulated the grand jury to return the indictment. Riedel maintained that the grand jury had all the information which formed the basis of the indictment by June 12th, when the prosecutor was still assuring him that he was not a target.

The district court examined the grand jury transcript of proceedings and concluded there was competent evidence to support Counts 2 through 25 (the substantive charges) and found no indication that the grand jury had been manipulated. In an oral ruling the district court expressed doubt that there was any evidence in the

record to support all the elements of Count 1, the conspiracy count. The court ordered disclosure of the entire grand jury transcript pursuant to Rule 6(e), Federal Rules of Criminal Procedure, and deferred final ruling on dismissal of Count 1.

Following briefing by the parties the district court entered a memorandum and order on the government's motion for reconsideration of its oral ruling. The district court reaffirmed its order of disclosure limited, however, to the testimony of members and employees of the two locals and an officer of the international union, 12 witnesses in all. In ordering disclosure, the court relied heavily on the policy of "openness in union affairs" contained in the Labor-Management Reporting and Disclosure Act of 1969 (LMRDA) of which 29 U.S.C. § 501(c) is a part. The court recognized the longstanding policy of secrecy of grand jury proceedings, but reasoned that the opposing policy of openness in union affairs "injects a relaxant" into the usual requirement that the need for disclosure be shown with particularity. The court stated that union members and employees who testify before a grand jury should expect their testimony to be made public in view of the openness requirements of the LMRDA, and that such witnesses "do not fit the mold" of those who would refuse to testify if they knew their testimony would not remain secret. Finding that some of the testimony of union members and a union employee may be exculpatory, the court ordered the entire transcript of testimony of these witnesses disclosed to the defendants.

Turning to Count 1, the court stated that it had decided *sua sponte* to dismiss the conspiracy charge. In doing so, the court noted that a conspiracy conviction requires something more than the joint action required to prove aiding and abetting—the additional element of "preconcert and connivance." Based on its examination of the entire grand jury record, the district court concluded that "[n]either direct nor circum-

own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or

indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

stantial proof exists in the record of any agreement to accomplish a violation of section 501(c)." Count 1 was dismissed with prejudice. The government advised the court that it would decline to comply with the order of disclosure. The court then dismissed Counts 2 through 25 without prejudice, and this appeal followed.

## II.

The district court relied on *United States v. Tane*, 329 F.2d 848 (2d Cir. 1964), and *Coppedge v. United States*, 311 F.2d 128 (D.C.Cir.1962), *cert. denied*, 373 U.S. 946, 83 S.Ct. 1541, 10 L.Ed.2d 701 (1963), in dismissing Count 1 with prejudice. In *Tane* an indictment was dismissed where the only evidence before the grand jury had been obtained by illegal wiretapping and the government conceded that dismissal was proper if this evidence could not be used. The court of appeals stated:

> A defendant has no right to have an indictment dismissed merely because incompetent or inadequate evidence was presented to the Grand Jury. *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). But a motion to dismiss or quash an indictment because of the absence or incompetency of evidence before the Grand Jury is addressed to the discretion of the trial court, and the decision to grant or deny the motion will not be reversed unless there has been an abuse of that discretion. *Carrado v. United States*, 93 U.S.App.D.C. 183, 210 F.2d 712, 717 (D.C.Cir.1953), cert. denied 347 U.S. 1018, 74 S.Ct. 874, 98 L.Ed. 1140 (1954); *Stewart v. United States*, 300 F. 769, 777 (8 Cir. 1924). As long as there is some competent evidence to sustain the charge issued by the Grand Jury, an indictment should not be dismissed.

329 F.2d at 853–54 (footnote and citation omitted). In *Coppedge* the trial court denied a motion to dismiss an indictment on the ground that it was procured by fraud through the perjured testimony of one witness. In affirming, the court of appeals stated, "It is enough . . . that there is *some* competent evidence to sustain the charge issued by the Grand Jury even though other evidence before it is incompetent or irrelevant in an evidentiary sense or even false." 311 F.2d at 132 (emphasis in original).

As we have noted, the government conceded that the indictment in *Tane* should be dismissed. The dicta in *Tane* and the use of the word "some" in both opinions support the conclusion that an indictment based on *no* evidence should be dismissed. However, the Supreme Court has never formulated such a rule. The leading case on the evidentiary requirements for a valid indictment is *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956). *Costello* held that a defendant in a criminal case is not entitled to have an indictment quashed on the ground that all the evidence presented to the grand jury was hearsay. After reviewing the history and function of grand juries, Justice Black wrote for the Court:

> If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more.

350 U.S. at 363, 76 S.Ct. at 408 (footnote omitted).

In two subsequent cases the Supreme Court repeated its *Costello* language. In *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958), the Supreme Court upheld a trial court's refusal to conduct a preliminary hearing to determine whether an indictment was based either

directly or indirectly on tainted evidence. In *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court held that a witness before a grand jury could not refuse to answer questions on the ground that they were based on evidence derived from an unlawful search and seizure. In so holding, the Court relied on *Costello.* This court has consistently given the *Costello* language a literal reading: "An indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for trial of the charge on the merits." 350 U.S. at 363, 76 S.Ct. at 408. See *United States v. Barone*, 584 F.2d 118 (6th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1019, 59 L.Ed.2d 73 (1979); *United States v. Ruyle*, 524 F.2d 1133 (6th Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1664, 48 L.Ed.2d 175 (1976); *United States v. Barnes*, 313 F.2d 325 (6th Cir. 1963). In *Barone, supra*, we mentioned one reason for strict application of the rule against inquiring into the workings of a grand jury where there is no claim that it is biased or illegally constituted:

> We are especially reluctant to see the trial of criminal cases further attenuated by preliminary trials concerning the adequacy of the grand jury proceedings, a concern particularly noted in *Costello.*

584 F.2d at 125.

We are aware of only one case in which a court, in the absence of a concession by the government, has dismissed an indictment on the ground of lack of evidence before the grand jury. In *United States v. O'Shea*, 447 F.Supp. 330, 332 (S.D.Fla.1978), the district court dismissed on finding that there "simply is no evidence sufficient to establish probable cause . . . ." In doing so, the court discussed the movement for abolition of grand juries and stated that inquiries into the proceedings of a grand jury should be made for preservation of the institution. One other court has recognized the possibility of dismissing for a complete absence of evidence, but has then found some evidence

when the grand jury transcripts were examined. See *United States v. Vargas-Rios*, 607 F.2d 831, 835 (9th Cir. 1979); *United States v. Romero*, 585 F.2d 391, 399 (9th Cir. 1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979).[2]

In at least two cases the Fifth Circuit has upheld denials of motions for dismissal on the ground that no evidence was presented to the grand jury in support of indictments. See *United States v. Cruz*, 478 F.2d 408 (5th Cir.), *cert. denied sub nom. Aleman v. United States*, 414 U.S. 910, 94 S.Ct. 259, 38 L.Ed.2d 148 (1973), and *Cohen v. United States*, 436 F.2d 586 (5th Cir.), *cert. denied*, 403 U.S. 908, 91 S.Ct. 2215, 29 L.Ed.2d 684 (1971). In *Cruz* the Court stated, "We will not review the sufficiency of the evidence, if any, supporting the grand jury indictments in this case." 478 F.2d at 412.

■ In the present case there was no claim by either defendant that the grand jury was biased or illegally constituted. Short merely sought disclosure of evidence which he contended was exculpatory. Riedel's charges of prosecutorial misconduct, which the district court found to have no merit, were not concerned with the evidentiary basis of the indictment. In dismissing Count 1 on its own motion the district court placed too much reliance on *Tane* and *Coppedge* and too little on *Costello* and the cases we have cited from this court. The indictment against Short and Riedel was valid on its face. The grand jury was legally constituted. Count 1 should have gone to trial on the merits.

■ Any other rule would wreak havoc, particularly in conspiracy cases. The element of agreement, which the district court found totally unsupported by the evidence before the grand jury, is nearly always established by circumstantial evidence, as conspirators seldom make records of their illegal agreements. Since direct proof of this element is usually lacking, a decision on whether it has been supplied by circumstantial evidence or permissible in-

---

**2.** In *Romero* the court relied on Justice Burton's concurring opinion in *Costello*, 350 U.S. at 364–65, 76 S.Ct. at 409. We decline to follow this opinion which received support from no other member of the Court.

ferences requires an examination of all the evidence and a determination of what inferences may properly be drawn. In effect, an extensive "mini-trial" would be required in response to any motion to dismiss a conspiracy indictment on the ground relied upon by the district court in this case. Not only would such proceedings be wasteful of judicial resources; they would be contrary to the underlying assumptions of the constitutional requirement that serious criminal charges be based on a grand jury presentment or indictment. One assumption is that a grand jury will be concerned with the rights of those who may be charged with crimes as well as with determining what offenses have been committed. When a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial. The indictment is not evidence, as every petit jury in a criminal case is instructed. The prosecu-

tion must still produce evidence from which the trial jury can find every element of the offense proven beyond a reasonable doubt, or the defendant is entitled to a judgment of acquittal. However, the prosecution's evidence is tested at trial, not in a preliminary proceeding.

## III.

In ordering disclosure of the grand jury record the district court relied primarily on Rule 6(e), F.R.Crim.P.[3] and *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966). Subsection 2 of Rule 6(e) sets forth the general rule of secrecy and subsection (3)(C) contains the exceptions under which the district court ordered disclosure in the present case. Subsection (3)(C)(i) commits the decision to order disclosure to the discretion of the trial judge. In this respect the Rule follows a long-established principle:

3. F.R.Crim.P. 6(e) provides:

(e) Recording and Disclosure of Proceedings.

(1) Recording of Proceedings.—All proceedings, except when the grand jury is deliberating or voting, shall be recorded stenographically or by an electronic recording device. An unintentional failure of any recording to reproduce all or any portion of a proceeding shall not affect the validity of the prosecution. The recording or reporter's notes or any transcript ·prepared therefrom shall remain in the custody or control of the attorney for the government unless otherwise ordered by the court in a particular case.

(2) General Rule of Secrecy.—A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce federal criminal law. An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made.

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.

If the court orders disclosure of matters occurring before the grand jury, the disclosure shall be made in such manner, at such time, and under such conditions as the court may direct.

It follows that the public interest in maintaining the secrecy of the grand jurors' deliberations and the interest of the accused in exposing them may often be in direct conflict. The responsibility of evaluating these conflicting considerations in the interest of truth and justice is a delicate one. It is unthinkable that the decision should be left to the bias of an accused or his counsel, or to the inexperience of a juror. Logically, the responsibility for relaxing the rule of secrecy and of supervising any subsequent inquiry should reside in the court, of which the grand jury is a part and under the general instructions of which it conducted its "judicial inquiry." *Cobbledick v. United States*, 309 U.S. 323, 327, 60 S.Ct. 540, [542] 84 L.Ed. 783; *Hale v. Henkel*, 201 U.S. 43, 66, 26 S.Ct. 370, [375] 50 L.Ed. 652. It is a matter which appeals to the discretion of the court when brought to its attention. This has long been the practice and we think it is sound procedural law. *Chadwick v. United States*, 6 Cir., 141 F. 225, 235; *McKinney v. United States*, [8th Cir., 199 F.2d 25] supra; *Grace v. United States*, 5 Cir., 4 F.2d 658; *Murdick v. United States*, 8 Cir., 15 F.2d 965, 968; *Cox et al. v. Vaught, Judge*, 10 Cir., 52 F.2d 562; *United States v. American Med. Ass'n*, [26 F.Supp. 429] supra; *In re Grand Jury Proceedings*, D.C., 4 F.Supp. 283.

*Schmidt v. United States*, 115 F.2d 394, 397 (6th Cir. 1940).

■■ However, the discretion of the trial judge in ruling on a motion for disclosure is not absolute. The Supreme Court has established requirements which must be met before the strong policy of maintaining secrecy of grand jury proceedings may be overcome. *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), was a civil action brought under § 4 of the Sherman Act. There had been a grand jury investigation, but no indictment had been returned. The defendants sought disclosure of the grand jury transcript pursuant to F.R.Civ.P. Rule 34 (one also moved under Criminal Rule

6(e)). The district court found that since the government was using the transcript in preparation for trial, it would be useful to the defendants as well and that a disclosure order was the only way it could be made available. The Supreme Court reversed the order directing disclosure, holding that there had been no showing by the defendants of the "compelling necessity" required for breaking the "indispensible secrecy of grand jury proceedings." 356 U.S. at 681–82, 78 S.Ct. at 985–86. This compelling necessity must be demonstrated by establishing a "particularized need" rather than a general one. *Id.* at 683, 78 S.Ct. at 986.

The requirement of a particularized need for disclosure was reaffirmed by the Court in *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959), a criminal antitrust case where the motion for disclosure was made pursuant to Criminal Rule 6(e): "The burden, however, is on the defense to show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy." *Id.* at 400, 79 S.Ct. at 1241. In *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), the Court held that a defendant in a conspiracy case had shown the required "particularized need" for a grand jury transcript. Factors which led to this conclusion were the nature of the case (conspiracy), the passage of time between grand jury appearances and trial, the fact that the portions of the transcript sought covered testimony of key government witnesses and that the testimony of these witnesses, consisting of conversations and oral statements, was largely uncorroborated. *Id.* at 872–73, 86 S.Ct. at 1850–51.

In both *Dennis* and *Pittsburgh Plate Glass* the motions were made after the witnesses had testified on direct examination, whereas in the present case disclosure was sought prior to the commencement of trial. Nevertheless, Rule 6(e) authorizes a disclosure order either "preliminarily to or in connection with a judicial proceeding...." The government argues that a 1970 amend-

ment to the Jencks Act, 18 U.S.C. § 3500[4] made grand jury minutes discoverable only after a grand jury witness had testified at trial, thus depriving a trial court of any discretion to order such disclosure in advance of trial. There is support for this position. *See United States v. Campagnuolo*, 592 F.2d 852, 858 (5th Cir. 1979); *United States v. Pelton*, 578 F.2d 701, 709 (8th Cir.), *cert. denied*, 439 U.S. 964, 99 S.Ct. 451, 58 L.Ed.2d 422 (1978); *cf. United States v. Bruton*, 647 F.2d 818, 823–24 (8th Cir. 1981); *United States v. Callahan*, 534 F.2d 763, 766 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976); *United States v. Quintana*, 457 F.2d 874, 878 (10th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130 (1972). However, we disagree

with this reading of the congressional intent.

■■ The Jencks Act generally requires the government, on motion of a defendant, to produce statements in its possession of witnesses who testify at a trial. The defendant is only entitled to the statement after the witness has testified. In *Pittsburgh Plate Glass, supra*, 360 U.S. at 398–99, 79 S.Ct. at 1240, the Supreme Court construed the Act as having no application to grand jury transcripts. Congress then amended the Act in 1970 to include grand jury testimony within the definition of "statement" as used in subsections (b), (c) and (d) of § 3500. Congress did not include grand jury testimony in the definition of "statement" as used in § 3500(a). Subsection (a) refers to statements or reports in

---

**4.** As amended in 1970 the Jencks Act provides:

§ 3500. Demands for production of statements and reports of witnesses

(a) In any criminal prosecution brought by the United States no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of

such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared.

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

possession of the prosecution made by a government witness *or prospective government witness.* Subsections (b), (c) and (d) refer only to statements of witnesses who actually testify at the trial and prescribe the procedure for obtaining disclosure of their "statements," including grand jury transcripts, after they have testified. However, the general prohibition in § 3500(a) against requiring disclosure of statements of witnesses until after they have testified does not apply to grand jury testimony. The 1970 amendment by its terms made the definition of "statement" include grand jury testimony only when sought after a witness has testified at trial. The 1970 amendment did not affect a trial court's discretion to order pretrial disclosure of grand jury testimony. The purpose of the Jencks Act—to give defendants access, *at the trial,* to statements previously made by government trial witnesses—was not changed by the 1970 amendment.[5] The amendment merely made clear that after a government witness has testified, that witness's grand jury testimony, if any, is included among the "statements" which the defendant is entitled to have produced. The Jencks Act does not apply to a motion for pretrial disclosure of a grand jury transcript. *United States v. Glassman,* 562 F.2d 954, 957 (5th Cir. 1977); *United States v. Budzanoski,* 462 F.2d 443, 454 (3d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 271, 34 L.Ed.2d 220 (1972); *see* 8 Moore's Federal Practice ¶ 6.05[3] at 6–113 (1981). Such a motion is covered by Rule 6(e). The discretion of the trial judge and the requirement of a showing of "particularized need" still govern motions for pretrial disclosure of grand jury transcripts. This conclusion is buttressed by the Supreme Court's decision in *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1978), which applied the "particularized need" requirement to a pretrial motion for disclosure of grand jury transcripts in a case which arose after the 1970 amendment to the Jencks Act. Though *Douglas Oil* was a civil antitrust action, the motion for disclosure was made pursuant to Rule 6(e), F.R.Crim.P. Compare *United States v. Proctor & Gamble Co., supra.*

### IV.

We conclude that it was an abuse of discretion for the district court in this case to fail to require that the defendants meet the "particularized need" test for disclosure of grand jury transcripts. The court reached its conclusion to order disclosure on the basis of a determination that the "openness" policy of the LMRDA outweighs the need for secrecy of grand jury proceedings, a need referred to by the Supreme Court as "indispensible." *United States v. Johnson,* 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943). The district court found that union members and employees "do not fit the mold" of those who would likely be deterred from giving testimony by the knowledge that it would be divulged. On the contrary, we believe that members and employees of a local union would be particularly concerned about arousing the displeasure of a business agent. From the evidence which we have examined it is clear that Short ran both locals with virtually unchecked authority. He alone notified members of requirements for their services by employers and he made the referrals which resulted in employment. The member witnesses depended on Short for their very livelihood. The employee who testified, an office secretary, was hired by Short and worked in the same office with him. These witnesses were vulnerable and had every reason to desire that their testimony about Short and Riedel[6] be kept

---

5. The legislative history of the 1970 amendment is sparse. However, all five cases referred to in Senate Report No. 91–617 dealt with disclosure motions made at trial. The purpose of the amendment was to establish a uniform procedure for the disclosure of grand jury minutes. There was no indication of any intent to make the Jencks Act control pretrial requests for disclosure.

6. Several witnesses testified that Riedel, as secretary-treasurer of Local 27, was the member they relied upon to check and verify Short's claims for expenses.

secret until they were required to repeat it in open court.

We have found no case where the openness policy of the LMRDA was held to relax the requirement for a showing of particularized need. In *United States v. Bertucci*, 333 F.2d 292 (3d Cir.), *cert. denied sub nom. Doherty v. United States*, 379 U.S. 839, 85 S.Ct. 75, 13 L.Ed.2d 45 (1964), a request for disclosure of grand jury testimony at trial (before amendment of the Jencks Act) was denied on the ground that no particularized need had been demonstrated. *Bertucci* was a prosecution for conspiracy to violate the LMRDA. In *Budzanoski, supra,* the purpose of the LMRDA to provide union members with information about union affairs was discussed. Yet the particularized need requirement was applied to a pretrial motion for disclosure of a grand jury transcript. It has also been held in a civil action under the LMRDA by union members against the union's officers, claiming a violation of fiduciary duties, that section 501 does not provide plaintiffs with a discovery tool. *Gabauer v. Woodcock*, 594 F.2d 662 (8th Cir. *en banc), cert. denied,* 444 U.S. 841, 100 S.Ct. 80, 62 L.Ed.2d 52 (1979). If the "openness" policy of the LMRDA would not provide a basis for civil discovery in a case such as *Gabauer*, we do not believe it carries sufficient force to overcome the firmly rooted policy of secrecy of grand jury proceedings. A general claim such as that made by Short that disclosure of grand jury transcripts would reveal exculpatory evidence is not sufficient to satisfy the requirement of a showing of particularized need.

 If the assertion that disclosure would reveal exculpatory evidence is true, the rights of the defendants with respect to this material are protected by the Jencks Act and the requirements of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government has disclosed to the defendants the names of all the witnesses who testified before the grand jury. A *Jencks* motion will bring to the defendants copies of the grand jury testimony of each government witness who testifies at the trial. If the government fails to call any of the grand jury witnesses at trial and the defendants are convicted they will be able to rely on the *Brady* doctrine to argue for reversal claiming that the government has suppressed exculpatory testimony given by these persons before the grand jury. This is not to say that a *Brady* violation may not occur when the prosecution fails to disclose exculpatory material in response to a pretrial motion. The violation may take place at that time, but *Brady* may be invoked only when the trial has been completed. While the problem exists for a prosecutor before and during a trial, it becomes a concern of the court after the trial has ended. See *United States v. Agurs*, 427 U.S. 97, 107–08, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). As this court has stated, "*Brady* was never intended to create pretrial remedies." *United States v. Moore*, 439 F.2d 1107, 1108 (6th Cir. 1971).

V.

The defendant Riedel argues that he was entitled to have all counts against him dismissed for prosecutorial misconduct. Thus he contends that even if this court should disagree with the reasons given by the district court for dismissing the indictment, we should affirm the dismissal as to him. Riedel argues that he received "equitable immunity" from the prosecution when he was advised that he was not a target of the grand jury's investigation and that he answered questions on the basis of these assurances. An examination of the transcript reveals that Riedel did not testify on the basis of assurances from the prosecutor that he was not a target. Indeed, he invoked his Fifth Amendment privilege against self-incrimination at each of his appearances before the grand jury. The circumstances are entirely different from those disclosed by the opinion in *Rowe v. Griffin*, 497 F.Supp. 610 (M.D.Ala.1980), upon which Riedel bases this argument.

It has been held that the issue of prosecutorial misconduct may not be raised as part of a pretrial appeal. See *United States v. Wright*, 622 F.2d 792, 794 (5th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980); but see *United States v. Griffin*, 617 F.2d 1342, 1345 (9th Cir.), *cert. denied*, 449 U.S. 863, 101 S.Ct. 167, 66 L.Ed.2d 80 (1980); compare *United States v. Garner*, 632 F.2d 758, 765 (9th Cir. 1980), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). Absent compelling circumstances which would prevent meaningful review following trial, the strong policy of this court against piecemeal review leads to the conclusion that ordinarily a claim of prosecutorial misconduct is reviewable only after trial. However, the district court made a specific finding on the issue, and forwarded the grand jury transcript to this court under seal. Since we have the entire record before us on the government's appeal, and a clear ruling by the district court on the issue, judicial economy will be served by deciding it at this time. Our examination of the grand jury record convinces us that the district court did not err in finding that the government attorney did not manipulate the grand jury and was not otherwise guilty of prosecutorial misconduct. Though we reverse the judgment of the district court dismissing the indictment, we affirm this holding upon which the defendant Riedel has sought review.

The judgment of the district court is reversed, and the cause is remanded for further proceedings.