724 F.Supp. 62 (1988)
UNITED STATES of America, Plaintiff,
v.
BESTWAY DISPOSAL CORP.; Engar, Inc.; Wowkowych Enterprise Disposal Services, Inc.; Suburban Disposal Corp.; and Ruoff, Inc., Defendants.
No. CR-86-210T.
United States District Court, W.D. New York.
October 28, 1988.
On Motion For Stay of Execution April 10, 1989.
*63 Dept. of Justice Antitrust Div. by John Greene, Philip Cody, Dennis Stewart and Patricia L. Howland, New York City, for the Government.
Nixon, Hargrave, Devans & Doyle by John Stuart Smith, Rochester, N.Y., for defendant, Bestway Disposal Corp.
Edward Z. Menkin, Syracuse, N.Y., for defendant, Engar, Inc.
Harris, Beach & Wilcox by Lawrence J. Andolina, Geiger, Rothenberg & Feldman by David Rothenberg, Rochester, N.Y., for defendant, Wowkowych Enterprise Disposal Services, Inc.
Alfred P. Kremer, Rochester, N.Y., for defendant, Surburban Disposal Corp.
Harris, Beach & Wilcox by Paul Braunsdorf, Rochester, N.Y., for defendant, Ruoff, Inc.

DECISION and ORDER
TELESCA, Chief Judge.

INTRODUCTION
In a one count indictment filed December 9, 1986, the defendants, Bestway Disposal Corp. ("Bestway"), Engar, Inc. ("Engar"), Wowkowych Enterprise Disposal Services, Inc. ("Enterprise"), Suburban Disposal Corp. ("Suburban"), and Ruoff, Inc. ("Ruoff"), are charged with conspiring to unreasonably restrain interstate and foreign trade and commerce in violation of Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1. Specifically, the Government contends that the defendants, all of which provide refuse removal services, conspired to allocate customer territories, thereby unlawfully restraining trade from 1978 through 1984 in the commercial refuse disposal industry within Monroe County.[1] Five defendants were named in the indictment, however, Bestway moved pursuant to Fed.R.Crim.P. 11(b) to withdraw its not guilty plea and plead nolo contendere to the charge set forth in the indictment. That motion was granted by United States District Judge David G. Larimer by Decision and Order dated May 26, 1988, and on June 7, 1988, Bestway appeared before Judge Larimer and entered its plea. Judge Larimer deferred imposing a sentence on Bestway pending the final outcome of this trial, as reflected by this decision.
On August 11, 1988, this matter was transferred to this Court for trial. Pursuant to Fed.R.Crim.P. 23(a) all parties consented in writing and I ordered that this *64 case be tried without a jury. Opening statements were heard on September 6, 1988. The Government called its first witness on September 14, 1988, and after nine days of testimony, rested its case on October 14, 1988. Upon completion of the Government's case all of the defendants moved for judgments of acquittal pursuant to Fed.R.Crim.P. 29(a) and presented oral argument on those motions on October 20, 1988. I reserved decision on their motions and directed the defendants to go forward with their case. On Monday, October 24, 1988, the defendants rested and all counsel presented closing arguments.

VERDICT
I have reviewed the defendants' papers and arguments in support of their motions for judgments of acquittal at the close of the Government's case and the Government's opposition thereto and hold that the defendants are not entitled to judgments of acquittal in light of the high standard for granting relief under Fed.R.Crim.P. 29(a). See e.g. United States v. DeGarces, 518 F.2d 1156, 1159 (2d Cir.1975). However, based upon all the evidence presented at trial, I conclude that the Government failed to sustain its burden of proving the defendants guilty beyond a reasonable doubt of the crimes charged in the indictment. The defendants Engar, Inc., Wowkowych Enterprise Disposal Services, Inc., Suburban Disposal Corp., and Ruoff, Inc., are acquitted of those charges.
In accordance with Fed.R.Crim.P. 23(c), I make the following findings in support of the above verdict.

FACTS
The Government presented the testimony of Carl Grimm, Frank W. Wowkowych, Jr., H. Stuart Engar, and Robert T. Roth, all of whom were principals of the defendant corporations, as well as, George Bunting, David Alexyn, Terrence Moulton, and Kenneth Coakley, all of whom were employed by the defendant corporations at some point during the six-year period covered by the indictment. All of these witnesses testified about the commercial trash removal industry during that time as well as their particular involvement in the industry and interaction with other trash haulers within Monroe County.[2] Six of the eight witnesses called by the Government were granted immunity pursuant to 18 U.S.C. § 6001, et seq.[3]
All the defendants named in the indictment provided commercial refuse hauling services in different parts of Monroe County. Bestway began its operations in Brighton, but during the course of the six-year indictment period expanded its services to many other towns within the County. Engar operated its commercial refuse removal business in Gates and Chili. Enterprise provided commercial hauling in Greece, Irondequoit and parts of the City of Rochester. Suburban serviced commercial customers in Greece, Ogden, and Parma. Ruoff maintained commercial accounts in Webster, Irondequoit, Brighton and Penfield. Although the named defendants operated within certain geographic areas, numerous other refuse removal concerns had commercial customers in their areas as well. The parties concede that no single defendant was the sole provider of commercial trash hauling in any township in which it operated.
The principals of the defendant corporations were all acquainted with one another and frequently had discussions on both business and personal levels. All of the defendant corporations and their principals were members of the Private Refuse Collectors of Monroe County, an organization of approximately 25 local trash haulers *65 which met on approximately a monthly basis, except for during the summer. During the meetings, members discussed topics of mutual interest such as pending legislation that may affect the industry, as well as other problems and concerns common to the membership. Before and after the actual meetings individual members would socialize generally, discussing business and non-business related matters.
The testimony revealed, and the parties do not dispute, that there were 20 to 30 refuse removal services operating within Monroe County during the relevant time frame. In the late 1970's, most of these providers were small "Mom and Pop" operations, however, larger, "national" operations were becoming active in the Monroe County market. Specifically, beginning around 1973, Waste Management, Inc. ("Waste Management") offered commercial refuse removal within the County. Browning-Ferris, Inc. ("BFI") also became active in the Rochester area, first during the mid-1970's[4], but did not move to expand its market share here until after 1981 or 1982 when it successfully bid for the City of Rochester's refuse transfer station account.
Several witnesses testified that the market power and competitive impact of the "nationals" was of great concern to the small, local trash haulers.[5] Naturally, this concern would be a topic of discussion amongst those haulers in an effort to protect their businesses from being forced out of the market. With the hope of presenting a unified front against the imposing capabilities of the "nationals", at times, some or all of the defendants discussed merging their operations to allow them to service a broader customer base more economically. However, no merger ever materialized, essentially because the principals mistrusted each other.
During the indictment period there were occasions when certain defendants (Engar and Bestway in 1980 and 1982) entered into contracts to buy and sell accounts from one another. Incidental to two such agreements, in 1980 and 1982 Engar and Bestway entered into written convenants not to compete. (Government's Exhibits 101, 108, 109, 110).
The refuse removal industry grew rapidly during the period from 1978 through 1984. The national economy became stronger and, as a result, residential and commercial land development increased thus creating a robust demand for trash removal services. Consequently, all of the defendant corporations experienced growth in terms of their commercial hauling services during the same period. Suburban, Ruoff, Engar and Enterprise elected to service commercial accounts in certain limited areas within Monroe County. Bestway, on the other hand, took an aggressive stance and sought new accounts throughout Monroe County according to a carefully executed plan. Robert Roth mapped out a strategy whereby his sales force would target the commercial accounts in a particular part of Monroe County for active solicitation. In order to establish a base of operation, Bestway actively sought a school, an apartment complex or a large business to serve as the anchor in a particular locality. Bestway then aggressively campaigned by soliciting customers in that area for residential and commercial accounts. Bestway's plan was to solicit by targeting a certain area already served by a competitor taking each competitor on one by one while at the same time telling the others "I won't bother you if you won't bother me". Roth testified that Bestway "had a very *66 definite set of goals and a very definite marketing plan that [it] had implemented and stuck to." (Tr. 1166). Bestway was the only alleged co-conspirator that actively solicited commercial accounts. Suburban, Ruoff, Enterprise and Engar instead chose to assume a less aggressive posture, gaining new commercial accounts through acquisition and by responding to direct customer telephone inquiry.

DISCUSSION

A. Intent
Section 1 of the Sherman Anti-Trust Act, 15 U.S.C. § 1, in relevant part provides:
Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $1 million if a corporation ...
It is the conspiracy itself that constitutes a violation of § 1 of the Sherman Act, no overt act in furtherance of the conspiracy need be shown. United States v. Socony-Vacuum Oil Co., Inc., 310 U.S. 150, 224 n. 59, 60 S.Ct. 811, 845 n. 59, 84 L.Ed. 1129 (1940).
The Government contends that the offenses charged in the indictment, price fixing and allocations of customers and territories, are per se violations of § 1 of the Sherman Act. In Northern Pacific Railway Co. v. United States, the Supreme Court stated that
[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.
356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958). Indeed, agreements to fix prices have been held per se unlawful, United States v. Socony-Vacuum Oil Co., Inc., supra, as have agreements to divide markets, United States v. Addyston Pipe & Steel Co., 85 F. 271 (6th Cir.1898), aff'd, 175 U.S. 211, 20 S.Ct. 96, 44 L.Ed. 136 (1899), and agreements to allocate customers and territories, United States v. Topco Associates, Inc., 405 U.S. 596, 92 S.Ct. 1126, 31 L.Ed.2d 515 (1972); United States v. Koppers Co., Inc., 652 F.2d 290 (2d Cir.), cert. denied, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981); United States v. Consolidated Laundries Corp., 291 F.2d 563 (2d Cir.1961); United States v. Cadillac Overall Supply Co., 568 F.2d 1078 (5th Cir.), cert. denied, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978).[6]
The Government submits that under the holding in United States v. Koppers Co., Inc., supra, to be afforded per se treatment, it need only prove that the defendants agreed not to solicit each other's commercial customers. The Government consistently argued throughout the case that proof, (through immunized testimony) that the principals of the defendant corporations each said "... I'll stay off your back if you'll stay off mine", constituted an *67 agreement which was per se violative of § 1 of the Sherman Act. However, the Government failed to make the requisite preliminary showing that the defendants intended to form an agreement to violate the Sherman Act. The Supreme Court has expressly stated that proof of intent is critical to sustain a criminal conviction under the Sherman Act and that this element of intent includes "the basic intent to agree ... and the more traditional intent to effectuate the object of the conspiracy." United States v. United States Gypsum Co., 438 U.S. 422, 443 n. 20, 98 S.Ct. 2864, 2876-77 n. 20, 57 L.Ed.2d 854 (1978). The Second Circuit has also recognized this threshold intent requirement in Koppers, supra, 652 F.2d at 295.
The Government relied heavily upon the statement: "Where per se conduct is found, a finding of intent to conspire to commit the offense is sufficient; a requirement that intent go further and envision actual anti-competitive results would reopen the very question of reasonableness which the per se rule is designed to avoid." Koppers, supra, 652 F.2d at 296, n. 6. However, the complete language of that footnote clearly directs that the Government must prove the element of criminal intent to allocate territories beyond a reasonable doubt in order to establish that an agreement is then subject to per se analysis. Here, the Government failed to prove intent to enter such an agreement which is a critical element of proof and having failed to do so by competent evidence beyond any reasonable doubt, none of the defendants can be convicted of the crime charged in the indictment. Intent to perform an illegal act cannot be presumed. It must be proven.
The Government's proof fell far short of proving that the conversations between the various corporate principals constituted illegal agreements to restrain trade and inhibit competition. The elements of intentional conductthat is, that the defendants conspired and intentionally entered into an illegal agreement to allocate customers as contemplated by the Sherman Anti-Trust Act simply was not shown here.
First, as to the Government's case against Ruoff, the proof was limited to the testimony of Robert Roth, former President of Bestway.[7] Roth testified that he ordered Bestway's sales force into the Town of Webster much like a "military campaign", to establish a "presence" in Webster and compete for Ruoff's customers. He conceded that the campaign was a failurein fact, a costly failure. He admitted that he and Ruoff had never been friends and, in what could be construed to be an attempt to save face, Roth told Ruoff, "I will stay out of Webster if you stay out of Brighton." Ruoff's response according to Roth was some form of affirmation but the emphasis in his statement was "I'll be happy if I never see you again". Ruoff's version was never heard because he was not called to testify. Contrary to the Government's assertion, this did not constitute an agreement to allocate territories. This was the statement of a defeated "general" outlining the terms of his face-saving withdrawal from "the battle". Ruoff was the clear winner. The reasonable inference to be drawn from Roth's conversation with Rouff is that there was an "acceptance of the competitive reality" faced by the parties. Richards v. Neilsen Freight Lines, 810 F.2d 898, 903 (9th Cir.1987). Ruoff and Roth never "agreed" in the manner and for the contemplated evil purpose envisioned by the Sherman Act.
As to Engar, Suburban and Enterprise, the Government likewise failed to carry its burden of proving the critical element of intent of the parties to allocate territories. Having failed to prove that element, the Government failed to prove an agreement which would qualify as a per se violation of the Sherman Act.
By way of background, there are a number of concerns which the principals of the defendant corporations had in common, and which motivated their conduct. First, each said in words or substance, "I will leave *68 you alone if you leave me alone". Suburban, Ruoff, Enterprise and Engar were among the smaller haulers in Monroe County during the period 1978 through 1984. They eventually limited their operations within certain geographical areas in Monroe County. Bestway, in that period, had developed very aggressive solicitation practices through its sales force and sought to enlarge its customer list everywhere in the County. Even though Roth, at one time or another, stated to each of the other principals "I'll stay off your back if you stay off my back", he admitted that he never fully intended to honor his statements.[8] He knew he was a threat to each of his competitors. His strategy was to lull each into a false sense of security while at the same time aggressively pursuing their accounts on a piecemeal basis. He spoke of his efforts as "military campaigns" in which he utilized the element of surprise. (After hearing and evaluating his testimony, a more appropriate term would be the element of deceit, i.e., saying one thing and meaning another.)
The same was true with the other defendants, mainly Suburban, Enterprise and Engar. Although their principals sought security through some form of an understanding or assurance not to solicit each other's accounts, none of them ever fully intended it. The fact is, the principals did not, and knew they could not, trust each other enough to work together. When the principals of the defendant corporations discussed not soliciting one another's commercial accounts, they essentially engaged in "wishful thinking," knowing with certainty that if a profitable opportunity to take a commercial account from another hauler presented itself, the hauler would not hesitate to take that account. The testimony showed that each defendant lost commercial accounts to and took commercial accounts from other of the named defendants. There simply was no meeting of the minds, no mutuality of purpose, to support a finding that a criminal agreement to control territories existed among the defendants.
The Government's contention that the written covenants not to compete entered into by Bestway and Engar in 1980 and 1982 demonstrate the existence of a criminal conspiracy is completely without merit and lacks any basis in existing law. Indeed, covenants not to compete ancillary to the sale of a business or part of a business do not implicate the Sherman Act if the limitations included in the covenant are reasonable. Syntex Laboratories, Inc. v. Norwich Pharmacal Co., 315 F.Supp. 45, 56 (S.D.N.Y.1970), aff'd, 437 F.2d 566 (2d Cir.1971); Reed, Roberts Associates, Inc. v. Strauman, 40 N.Y.2d 303, 307, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976). The restrictions contained in the two written agreements between Engar and Bestway were reasonable and, therefore, enforceable. They provide no evidence of intent to violate the Sherman Act. Even the Government's economic expert, Dr. John Bender, opined that no conclusions could be drawn from the use by the defendants of covenants not to compete as to the existence or non-existence of a conspiracy.
The Government's attempt to prove through Kenneth Coakley that a conspiracy to prevent competition was in place and operative was unavailing. Coakley had been employed by Bestway for approximately six months and was under the supervision of David Alexyn. Coakley testified, in part, about a price increase imposed on a Bestway account called Tierney's Super Duper, located at Twelve Corners in Brighton. He told the Court that Alexyn instructed him to inform Mr. Tierney of the significant price increase and testified further that he assumed Alexyn contacted Frank Wowkowych, Jr., and other haulers and asked them not to offer a lower price if Mr. Tierney made inquiry. This assumption was not only dangerous but unwarranted. No proof was introduced through Coakley or any other witness of any conversation or agreement not to offer a lower price to Mr. Tierney by one of the defendants. Coakley's self-proclaimed knowledge *69 of how the waste industry "usually" functioned was the only basis upon which his statements were premised.[9] Coakley's testimony is not competent evidence of any conspiratorial conversation or agreement, nor of the implementation of any conspiratorial understanding to fix or control prices. It is based upon the opinion of a disgruntled, dismissed employee of one of the defendant corporations, Bestway, and at best, based entirely upon his assumptions as to what he thought took place.

B. Interstate Commerce
To establish jurisdiction under the Sherman Act, the Government must show that "the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce." McLain v. Real Estate Board of New Orleans, Inc., 444 U.S. 232, 242, 100 S.Ct. 502, 509, 62 L.Ed.2d 441 (1980). The Second Circuit interpreting this requirement has stated that
[T]he inquiry must be whether the defendant's activity that has allegedly been "infected" by unlawful conduct can be shown `as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." (quoting McLain, supra, 444 U.S. at 246, 100 S.Ct. at 511).
Furlong v. Long Island College Hospital, 710 F.2d 922, 926 (2d Cir.1983). The Government presented evidence that the defendants purchased equipment manufactured out of state, collected trash that came into Rochester from out of state on inbound United Airlines and USAir flights,[10] and received payment from out of state corporate headquarters for services provided on some accounts. I have strong doubts as to whether there was sufficient proof between the alleged "infected" activity and its affect on interstate commerce to support criminal charges.

C. Competition
The central policy underlying the Sherman Anti-Trust Act is to protect "competition based on efficiency", Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 623, 95 S.Ct. 1830, 1835, 44 L.Ed.2d 418 (1975), thereby shielding the public from oppressive economic forces. I fail to see where any of the activities that the defendants engaged in contradicted this policy. In Gypsum, the Supreme Court noted that "the behavior proscribed by the [Sherman] Act is often difficult to distinguish from the gray zone of socially acceptable and economically justifiable business conduct." 438 U.S. at 440-41, 98 S.Ct. at 2875. The goals of the Sherman Act, to encourage competition and foster the development and continuation of an efficient market were not at all jeopardized by the activities of the defendants. The evidence was clear that competition amongst these defendants and other haulers in Monroe County was keen. The defendants' expert witness, Dr. George Benston, a noted economist, testified that the defendants' behavior was completely consistent with the economic theory of competition in the marketplace. I consider it remarkable that the most conclusive statement offered by the Government's rebuttal expert witness, Dr. John Bender (also an economist), was that he "ha[d] not seen anything that ... rules out the possibility of ... a conspiracy" amongst the defendants. More than a "possibility of a conspiracy" is neededit required proof beyond a reasonable doubt as to all elements of the crime and in *70 particular, the critical threshhold requirement of proof of the parties' intent to enter into a conspiracy to control territories. Moreover, as Dr. Benston testified, entry into the market was easily accomplished, requiring only the purchase of a truck and a garage. Ease of entry into the relevant market is evidence of a competitive market. See United States v. Waste Management, Inc., 743 F.2d 976 (2d Cir.1984). See also, Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc., 784 F.2d 1325 (7th Cir.1986); McCaw Personal Communications, Inc. v. Pacific Telesis Group, 645 F.Supp. 1166 (N.D.Cal.1986); United States v. Calmar Inc., 612 F.Supp. 1298 (D.N.J.1985). I find that actions of the defendants' principals were prompted by valid business motives based on concepts of economy and efficiency necessary to survival in the refuse removal industry. As Judge Kennedy observed in Richards, supra, "Conduct that is as consistent with permissible competitive behavior as with illegal conspiracy does not, without more, support an inference of conspiracy." 810 F.2d at 904. That principle applies with particular force in this case.

CONCLUSION
In a criminal case, the Government bears a heavy burden of proving the defendants guilty beyond any reasonable doubt. Guilt must be proven, it cannot be presumed. To find the defendants guilty by the evidence presented in this case would require the Court to improperly infer that they intended to violate the Sherman Anti-Trust Act. To do so would be to ignore the presumption of innocence in favor of the accused that is so firmly entrenched in our system of criminal justice. Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 402, 39 L.Ed. 481 (1895); Estelle v. Williams, 425 U.S. 501, 503, 96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1976). Because the Government has not sustained its burden of proof, all of the defendants are acquitted of the charge in the indictment.
Accordingly, I direct the Clerk to enter a judgment of acquittal in favor of Engar Inc., Wowkowych Enterprise Disposal Services, Inc., Suburban Disposal Corp. and Ruoff, Inc.
ALL OF THE ABOVE IS SO ORDERED.

On Motion For Stay of Execution
Defendant Bestway Disposal Corp. ("Bestway") moves pursuant to Fed.R. Crim.P. 38(c) for a stay of execution of a sentence imposed by this Court ordering Bestway to pay a fine of $250,000.00 within thirty (30) days of March 9, 1989. That fine was imposed as a sentence pursuant to a plea of nolo contendere previously entered by Bestway, having been charged with a violation of 15 U.S.C. § 1.
Whether or not a stay of execution of a sentence shall be granted is based upon the Court's discretion. Here, the defendant has not demonstrated sufficient grounds why this Court should grant the stay. Bestway relies upon the holding of some courts claiming that once a fine is paid, an appeal from that judgment becomes moot. That is not the rule in the Second Circuit. Bestway relies upon commentary in C. Wright, Fed.Practice and Procedure, Crim.2d § 633 (1980 Ed.).
Bestway entered its plea of nolo contendere based upon the advice of competent counsel. That plea was entered freely and knowingly with the understanding that a sentence would be subsequently imposed. Bestway has indicated neither a legal basis for the appeal nor that it would suffer irreparable harm should the stay be denied. Mulligan v. Zant, 531 F.Supp. 458, 459-60 (M.D.Ga.1982); United States v. Restor, 529 F.Supp. 579, 580 (W.D.Penn.1982).
Accordingly, defendant Bestway's motion to stay this Court's sentence pursuant to Fed.R.Crim.P. 38, is denied.
Pending appeal, the defendant Bestway is required to pay the whole fine ($250,000.00) to the registry of the district court pursuant to Fed.R.Crim.P. 38(a)(3).
ALL OF THE ABOVE IS SO ORDERED.
NOTES
[1] All of the defendant corporations engaged in residential and commercial refuse removal during the relevant period. Additionally, the commercial accounts can be subdivided into two categories, "roll-off" and "non roll-off" accounts. For a roll-off account, the hauler leaves a roll-off box at a customer's site. When the roll-off box is filled, the customer calls the hauler who comes and picks up the box. The testimony revealed that typically roll-offs are used for collecting building materials and similar refuse, or for very large amounts of commercial trash. Non-roll off accounts include all other commercial accounts. The charges in the indictment involve only non roll-off accounts.
[2] Carl Grimm was and is the principal of Suburban. Frank Wowkowych, Jr. was and is the principal of Enterprise. Robert Roth was the principal of Bestway. H. Stuart Engar was the principal of Engar. David Alexyn was the sales manager for Bestway and Kenneth Coakley was a Bestway salesperson under Alexyn's supervision. Terrence Moulton was a salesperson for Engar who supervised sales person George Bunting.
[3] Those witnesses granted immunity were: Carl Grimm, Frank Wowkowych, Jr., H. Stuart Engar, Robert Roth, David Alexyn and Kenneth Coakley.
[4] Robert Roth testified that BFI, in the early 1970's, had purchased some accounts in Buffalo which had smaller accounts in Rochester. However, in 1974 or 1975, BFI withdrew from the Rochester market because, according to Roth, BFI found it to be unprofitable.
[5] In an attempt to compete with the "nationals", during the early 1970's Bestway and Suburban, along with two other local refuse removal services, merged into Theta Systems, Inc. ("Theta"), an Illinois company. These four local trash removal services became known as Theta Systems of Western New York. However, Theta never became economically successful and the owners of the Western New York division, including Robert Roth of Bestway and Carl Grimm of Suburban, repurchased their individual interests from Theta in 1978 and continued in business independently.
[6] A review of the most recent cases dealing with the per se doctrine demonstrate that its vitality is weakening. As noted in the pre-trial memorandum submitted by counsel for Ruoff, the Supreme Court has stated that "there is often no bright line separating per se from Rule of Reason analysis," National Collegiate Athletic Association v. Board of Regents of the University of Oklahoma, 468 U.S. 85, 104 n. 26, 104 S.Ct. 2948, 2961 n. 26, 82 L.Ed.2d 70 (1984), and that "per se rules are appropriate only for conduct that is manifestly anticompetitive", Business Electronics Corp. v. Sharp Electronics Corp., 485 U.S. 717, 108 S.Ct. 1515, 1519, 99 L.Ed.2d 808 (1988) (citations omitted). Furthermore, in a recent decision, the Second Circuit Court of Appeals cautioned the Court below that on remand it should carefully consider any justifications to price fixing allegations posited by a defendant in a civil anti-trust action and stated that "[t]he relevant inquiry ... involves more than a question simply of determining whether two or more potential competitors have literally fixed a price." Volvo North America Corp. v. Men's International Professional Tennis Council, 857 F.2d 55, 71 (2d Cir.1988). This language suggests that per se analysis in anti-trust cases should be applied sparingly.
[7] I note that neither William Ruoff nor Ralph Ruoff were called by the Government to testify and that it was Roth's testimony alone which was offered to implicate Ruoff.
[8] Roth also testified that he made similar statements to principals of numerous other refuse removal companies operating in Monroe County during 1978 through 1984.
[9] Previously on August 15, 1985, Coakley testified before the Grand Jury. In regard to his contention that Bestway had an agreement with other haulers regarding Tierney's Super Duper at Twelve Corners, the following exchange took place:

Q. Did he [Alexyn] have to call haulers who operated on the west side of town?
A. He called everybodyIn my opinion, based on my own personal assumption, he called everybody that could possibly service the account, anybody he had direct contact with, which I would assume would be Suburban, Enterprise, Waste Management. I doubt he called Ruoff. He might have.
(Emphasis added.)
See also Trial Transcript p. 1541, 1543.
[10] Stuart Engar testified that Engar serviced United Airlines and USAir at the Monroe County Airport.